# No. 23-50870

## In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARLON LARON SIMIEN,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

**Brief of Defendant-Appellant**

———————————

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
Tel.: (210) 472-6700
Fax: (210) 472-4454

CARL R. HENNIES
Assistant Federal Public Defender

*Attorney for Defendant-Appellant*

## Certificate of Interested Persons

### UNITED STATES v. MARLON LARON SIMIEN, No. 23-50870

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Marlon Laron Simien,** Defendant-Appellant;

2. **Margaret F. Leachman,** Acting U.S. Attorney;

3. **Jaime Esparza** and **Ashley C. Hoff,** former U.S. Attorneys;

4. **Brian Nowinski, Ray Gattinella, and Fidel Esparza III,** Assistant U.S. Attorneys, who represented Plaintiff-Appellee in the district court;

5. **Maureen Scott Franco,** Federal Public Defender;

6. **Molly L. Roth,** Assistant Federal Public Defender, who represented Defendant-Appellant in the district court; and

7. **Carl R. Hennies,** Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ Carl R. Hennies
CARL R. HENNIES
*Attorney for Defendant-Appellant*

## Statement Regarding Oral Argument

Simien requests oral argument. He argues that his conviction for receipt of a firearm while under felony indictment, in violation of 18 U.S.C. § 922(n), violates the Second Amendment as applied to him based on his indictment for aggravated robbery. He also argues that 18 U.S.C. § 922(o), which makes it a crime to possess a machinegun, violates the Second Amendment. Argument would allow the parties to answer questions the Court may have about the facts or law relevant to this case.

# Table of Contents

Statement Regarding Oral Argument ............................................ ii

Table of Authorities .......................................................... v

Subject Matter and Appellate Jurisdiction ..................................... 1

Issues Presented for Review ................................................... 1

Statement of the Case ......................................................... 1

Summary of the Arguments ...................................................... 4

Standard of Review ............................................................ 5

Arguments and Authorities ..................................................... 5

I.  Section 922(n), as applied to Simien, violates the Second
    Amendment. ................................................................ 5

    A.  The legal framework for Second Amendment challenges
        as announced in *Bruen*, clarified in *Rahimi*, and applied
        to § 922(n) in *Quiroz*. .............................................. 5

    B.  Section 922(n) violates the Second Amendment as
        applied to Simien because the government cannot show
        a longstanding history of disarming someone with an
        indictment analogous to his ........................................ 14

        1.  Simien and his conduct—receipt of a firearm—are
            covered by the Second Amendment ................................ 14

        2.  There is no historical tradition of pretrial detention
            for a robbery indictee like Simien. ............................ 15

    C.  Simien's § 922(n) conviction is not rendered
        constitutional simply because he was serving a sentence
        when he received and possessed the firearms. .................... 19

II. Section 922(n) facially violates the Second Amendment. (Foreclosed.)............................................................... 24

III. Section 922(o) violates the Second Amendment both facially and as applied to Simien. ........................................... 28

    A. The Second Amendment's plain text covers possessing firearms, including a machinegun..................................... 28

    B. The government cannot show that § 922(o) aligns with the country's historical tradition of firearm regulation..... 30

Conclusion...................................................................... 33

# Table of Authorities

## Cases

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ............................................................ 30, 31

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015) ..................................................................... 23

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .......................................................... *passim*

*Friedman v. City of Highland Park*,
  784 F.3d 406 (7th Cir. 2015) ....................................................... 31

*Hollis v. Lynch*,
  827 F.3d 436 (5th Cir. 2016) ................................................. 29, 30

*Lange v. California*,
  594 U.S. 295 (2021) ..................................................................... 11

*Maloney v. Singas*,
  351 F. Supp. 3d 222 (E.D.N.Y. 2018) ......................................... 32

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ....................................................................... 6

*Nivelo Cardenas v. Garland*,
  70 F.4th 232 (5th Cir. 2023) ...................................................... 20

*NYSRPA v. Bruen*,
  597 U.S. 1 (2022) ................................................................ *passim*

*Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
  127 F.4th 583 (5th Cir. 2025) ......................................... 15, 26, 27

*Siders v. City of Brandon*,
  123 F.4th 293 (5th Cir. 2024) ..................................................... 29

*United States v. Austin*,
  125 F.4th 688 (5th Cir. 2025) ..................................................... 20

*United States v. Brown*,
  — F. Supp. 3d. —,
  2025 WL 429985 (S.D. Miss. Jan. 29, 2025) ............................. 31

*United States v. Bullock*,
  123 F.4th 183 (5th Cir. 2024).................................................... 12

*United States v. Connelly*,
  117 F.4th 269 (5th Cir. 2024).................................................... 10

*United States v. Contreras*,
  125 F.4th 725 (5th Cir. 2025).................................................... 13

*United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024).............................................*passim*

*United States v. Giglio*,
  126 F.4th 1039 (5th Cir. 2025)...................................... 13, 19, 21

*United States v. Goins*,
  118 F.4th 794 (6th Cir. 2024)............................................. 13, 22

*United States v. Gore*,
  118 F.4th 808 (6th Cir. 2024) .................................................. 15

*United States v. Mondragon-Santiago*,
  564 F.3d 357 (5th Cir. 2009) .................................................... 19

*United States v. Moore*,
  111 F.4th 266 (3d Cir. 2024) ....................................13, 19, 22, 23

*United States v. Quiroz*,
  125 F.4th 713 (2025) .........................................................*passim*

*United States v. Rahimi*,
  602 U.S. 680 (2024) ..........................................................*passim*

*United States v. Rahimi*,
  61 F.4th 443 (5th Cir. 2023) .................................................... 29

*United States v. Schnur*,
  132 F.4th 863 (5th Cir. 2025)............................................. 13, 18

*Worth v. Jacobson,*
  108 F.4th 677 (8th Cir. 2024) ...................................................... 27

## Constitutional Provisions

U.S. Const. amend. II ................................................................ 5, 28

## Statutes

18 U.S.C. § 922(g)(1) .............................................................. 10, 22

18 U.S.C. § 922(g)(3) ..................................................................... 13

18 U.S.C. § 922(g)(8)(C)(i) ............................................................. 6

18 U.S.C. § 922(n) ..................................................................... 1, 2

18 U.S.C. § 922(o) ...................................................................... 1, 2

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3742(a) ....................................................................... 1

26 U.S.C. § 5845(b) ..................................................................... 28

28 U.S.C. § 1291 ............................................................................ 1

2d Cong. Ch. 7, 1 Stat. 237 (1792) ................................................ 17

Crimes Act, 1 Cong. Ch. 9, 1 Stat. 112 (1790) ............................... 17

Judiciary Act of 1789, 1 Stat. 73, Sec. 33 ...................................... 18

Tex. Crim. Proc. Ann. art. 42A.101(a) ........................................... 20

Tex. Crim. Proc. Ann. art. 42A.111(a) ........................................... 20

## Other Authorities

Blackstone, W.,
  *Commentaries on the Laws of England* (10th Ed. 1787) ............. 7

Brief for the United States,
*United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023) .......... 8

Docket, *United States v. Diaz*, No. 24-6625 (U.S.) ....................... 14

Docket, *United States v. Moore,* No. 24-968 (U.S.)....................... 14

John N. Mitchell,
*Bail Reform and the Constitutionality of Pretrial Detention*,
55 Va. L. Rev. 1223 (1969) ........................................................... 16

Kellen R. Funk & Sandra G. Mayson,
*Bail at the Founding*, 137 Harv. L. Rev. 1816 (2024) ............... 16

Petition for Writ of Certiorari,
*United States v. Moore*, No. 24-968 (U.S.) ................................. 22

U.S. Dep't of Justice, Bureau of Alcohol, Tobacco,
Firearms and Explosives,
*Firearms Commerce in the United States:
Annual Statistical Update 2021*................................................. 31

**Rules**

Fed. R. App. P. 32(a)(5) ................................................................. 34

Fed. R. App. P. 32(a)(6) ................................................................. 34

Fed. R. App. P. 32(a)(7)(B) ............................................................ 34

Fed. R. App. P. 32(f) ...................................................................... 34

Fed. R. App. P. 4(b)(1)(A)(i) ............................................................. 1

## Subject Matter and Appellate Jurisdiction

This is an appeal from a final judgment in a criminal case alleging violations of federal law. The district court had jurisdiction under 18 U.S.C. § 3231. The district court entered its judgment on December 1, 2023. ROA.260. Simien timely appealed a day earlier. ROA.250; *see* Fed. R. App. P. 4(b)(2). This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## Issues Presented for Review

1.  Does 18 U.S.C. § 922(n) violate the Second Amendment as applied to Simien, who was under indictment for aggravated robbery?

2.  Does § 922(n) violate the Second Amendment facially? (Foreclosed.)

3.  Does 18 U.S.C. § 922(o) violate the Second Amendment?

## Statement of the Case

**Arrest and indictment.** In 2018, Marlon Laron Simien pleaded guilty to aggravated robbery in Texas state court and was placed on deferred adjudication. ROA.368. Soon after, a motion to revoke probation was filed and a warrant issued. ROA.368. In 2022, officers arrested Simien as he was leaving his apartment. ROA.317. During a search, the officers found a gun in his waistband.

1

ROA.317. The gun was a Glock 9mm caliber firearm that had a "switch" installed that allowed it to fire more than one round with a single action of the trigger. ROA.317–18. Officers then searched Simien's apartment, where they found another firearm with a "swift-link" that converted it from a semi-automatic into a machinegun. ROA.318, 365. The government charged Simien with possessing a machinegun in violation of 18 U.S.C. § 922(o) (count one) and receiving a firearm while under felony indictment in violation of 18 U.S.C. § 922(n) (count two). ROA.32–35.

**Motion to dismiss.** Simien moved to dismiss the indictment, arguing that both § 922(n) and § 922(o) violate the Second Amendment—facially and as applied to him—under the two-step framework set out by the Supreme Court in *NYSRPA v. Bruen*, 597 U.S. 1 (2022). ROA.62–84. *First*, Simien argued that the conduct prohibited by both statutes was covered by the plain text of the Second Amendment. ROA.69–73, 79–82. *Second*, Simien argued that the government could not show historical traditions similar to either law. ROA.73–78, 82–83. In response, the government claimed that neither receipt of a firearm generally nor possession of a machinegun specifically is protected by the Second Amendment (ROA.102–05)

and argued that § 922(n) and § 922(o) both align with the country's historical traditions of firearm regulation (ROA.105–18).

The district court denied Simien's motion to dismiss. ROA.182–99. As to § 922(n), the district court held that receipt of a firearm by someone under indictment is covered by the text of the Second Amendment but concluded that early American surety statutes presented a "sufficient, though imperfect, historical analogue to § 922(n)." ROA.191–96. As to § 922(o), the court held that machineguns do not receive Second Amendment protection because they are "dangerous and unusual" weapons. ROA.197–99. Simien asked the court to reconsider its decision, ROA.207–13, which the court declined to do, ROA.218–20.

**Plea and sentencing.** After the district court denied his motion to dismiss, Simien pleaded guilty to both counts. ROA.312–13. The court sentenced Simien to 65 months' imprisonment on count one and 60 months' imprisonment on count two (to run concurrently), as well as a 3-year term of supervised release. ROA.261–62, 358.

## Summary of the Arguments

**1.** Simien's § 922(n) conviction should be reversed because the statute violates the Second Amendment as applied to him. Under the framework established by *NYSRPA v. Bruen*, 597 U.S. 1 (2022), § 922(n) is presumptively unconstitutional because Simien is part of "the people" and the challenged conduct—receipt of a firearm—falls within the plain text of the Second Amendment. The government cannot carry its heavy burden of demonstrating that the Nation has a longstanding tradition of prohibiting a person indicted for robbery from receiving a firearm.

**2.** Simien preserves for further review his argument, foreclosed by *United States v. Quiroz*, 125 F.4th 713, 715 (2025), that § 922(n) facially violates the Second Amendment.

**3.** Simien's § 922(o) conviction should also be reversed because the statute violates the Second Amendment as applied to him. Machine guns are "arms" protected by the Second Amendment, and the government cannot carry its burden of showing that machineguns—possessed by nearly 1 million Americans—are dangerous and unusual weapons.

## Standard of Review

The Court reviews preserved constitutional challenges to a statute *de novo*. *United States v. Quiroz*, 125 F.4th 713 (5th Cir. 2025).

## Arguments and Authorities

### I.   Section 922(n), as applied to Simien, violates the Second Amendment.

Section 922(n) is presumptively unconstitutional because receiving a firearm is protected by the plain text of the Second Amendment. The government cannot show a historical tradition of prohibiting firearm receipt by someone under felony indictment for aggravated robbery. Thus, the district court's order denying Simien's motion to dismiss the indictment should be reversed and his § 922(n) conviction vacated.

#### A.   The legal framework for Second Amendment challenges as announced in Bruen, clarified in Rahimi, and applied to § 922(n) in Quiroz.

The Second Amendment to the United States Constitution mandates that a "well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment codifies an individual right to possess firearms,

the "central component" of which is self-defense. *See Bruen*, 597 U.S. at 29 (citing *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)). After *Heller*, this Court applied means-end scrutiny to determine whether a firearm regulation violated the Second Amendment. *See United States v. Diaz*, 116 F.4th 458, 465 (5th Cir. 2024) (collecting cases).

In *Bruen*, the Supreme Court rejected the application of means-end scrutiny to the Second Amendment and instead focused solely on text and history. 597 U.S. at 19. *Bruen* thus abrogated this Court's prior precedent. *Diaz*, 116 F.4th at 465. Under *Bruen*'s framework, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. "The burden then shifts to the Government to 'demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Diaz*, 116 F.4th at 465 (quoting *Bruen*, 597 U.S. at 17). Only then may a court conclude that the individual's conduct falls outside of the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17.

In *United States v. Rahimi*, the Supreme Court clarified the *Bruen* test, ultimately holding that 18 U.S.C. § 922(g)(8)(C)(i)—which bars those subject to a domestic violence restraining order

from possessing firearms—is constitutional facially and as applied to Rahimi. 602 U.S. 680, 693 (2024). *Rahimi* focused its analysis on the historical tradition of firearm regulations, with particular emphasis on the regulations in place at the time of the founding and ratification. *Id.* at 693–98. Relying on the traditions of surety and going armed laws together,[1] the Court held that there was a historical tradition of temporarily restricting a person's possession of firearms when an "individual poses a clear threat of physical violence to another." *Id.* at 698.

The Court drew a narrow purpose from the surety and going armed laws. Like § 922(g)(8)(C)(i), they "restrict[ ] gun use to mitigate demonstrated threats of physical violence." *Rahimi*, 602 U.S. at 698. How they burdened the right was also comparable to

---

[1] Surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Rahimi*, 602 U.S. at 695. They could be used in a variety of circumstances, including to address the "misuse of firearms." *Id.* at 696. While surety laws "provided a mechanism for preventing violence before it occurred," going armed laws addressed violence that had already happened. *Id.* at 697. For instance, going armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 149 (10th Ed. 1787)) (cleaned up). They punished such disruptions to the "public order" that "almost necessarily" led "to actual violence" by forfeiture of the arms and imprisonment. *Id.* (cleaned up).

§ 922(g)(8)(C)(i) because they were temporary restrictions and re-quired "judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 699. Thus, § 922(g)(8)(C)(i) is "'relevantly similar' to those founding era regimes in *both* why and how it burdens the Second Amendment right." *Id.* at 698 (emphasis added). The Court's histor-ical analysis "settle[d] on just the right level of generality." *Id.* at 740 (Barrett, J., concurring).

The Supreme Court rejected the government's invitation to adopt a broader principle at a much higher level of generality. The government argued that history and tradition support the principle that "Congress may disarm persons who are not law-abiding, re-sponsible citizens." Brief for the United States 12, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023). The Court was uncon-vinced. *Rahimi*, 602 U.S. at 701. The Court pointed out that "re-sponsible" is a "vague term" and that it is "unclear what such a rule would entail." *Id.* The Court also explained that the government's proposed test did not "derive from [its] case law." *Id.*

After *Rahimi*, this Court addressed § 922(n)—the same statute at issue here—in *Quiroz*. The Court "assume[d] arguendo that the plain text of the Second Amendment covers" a felon indictee and his

8

receipt of the firearm before turning to the historical analysis. 125 F.4th at 717. *Quiroz* held that § 922(n) is facially constitutional because it would not be unconstitutional in all its applications. *Id.* at 723. *Quiroz* reasoned that the historical tradition of pretrial detention is a relevantly similar analogue for § 922(n) because pretrial detention "resulted in the complete deprivation of the defendant's liberty and *ipso facto* restricted their access to weapons." *Id.* at 718. The Court held that § 922(n) burdens the right to armed self-defense "out of a concern for public safety," which was also a reason for pretrial detention at the founding. *Id.* Thus, "the modern *purpose* of § 922(n) is relevantly similar to the historical purpose of pretrial detention." *Id.* at 719 (emphasis added). *How* § 922(n) burdens the right to armed self-defense is also comparable to the founding-era system of pretrial detention because both are temporary, applying to the time between arrest or indictment and trial. *Id.*

Still, the Court recognized that "not everyone facing criminal charges was subject to pretrial detention at the founding." *Id.* Bail was commonly used to "release individuals not charged with a capital offense prior to trial." *Id.* Nevertheless, pretrial detention for offenses subject to capital punishment was prevalent enough at the founding to support that § 922(n) would be constitutional at least

in some of its applications—when a defendant was indicted for an offense that would have resulted in pretrial detention at the founding. *Id.* at 719–26.

*Quiroz* asserted that its analysis is consistent with this Court's earlier ruling in *Diaz* that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is constitutional both facially and as applied to Diaz, who has a prior felony conviction for vehicle theft. *Quiroz*, 125 F.4th at 724. Before addressing history, *Diaz* held that a felon is among "the people" protected by the Second Amendment and that the "plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." 116 F.4th at 466–67. Thus, § 922(g)(1) is presumptively unconstitutional. *Id.*

The government then had the "heavy burden" of demonstrating "that the challenged regulation is relevantly similar to laws our tradition is understood to permit." *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (quoting *Rahimi*, 602 U.S. at 692). For this inquiry, the Court held that only Diaz's prior felony convictions—not his misdemeanor convictions, concurrent conviction, or other conduct—were relevant to the historical analysis. *Diaz*, 116 F.4th at 467. Diaz's felony convictions were for evading arrest, possession of a firearm as a felon, and vehicle theft. *Id.* The government had

to "demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." *Id.*

Unable to find laws targeting the disarmament of a felon like Diaz, the Court instead turned to "historical laws authorizing capital punishment and estate forfeiture" as consequences for certain felonies. *Diaz*, 116 at 467, 469 (reasoning the greater burden of capital punishment justifies the lesser burden of permanent disarmament). Addressing the "why" and "how" of the regulations, *Diaz* reasoned that the purpose of capital punishment ("deterrence, retribution, and penitence") is relevantly similar to the justification for § 922(g)(1) ("to deter violence and lawlessness"). *Id.* at 469. And the "how" is sufficiently similar as well because both "permanently punish[ ] offenders." *Id.* at 469.

Thus, *Diaz* held that § 922(g)(1) is constitutional as applied to modern-day felons who fit into a historical tradition of capital punishment or estate forfeiture. *Id.* at 470. *Diaz* recognized that most modern-day felonies would not have a capital-punishment analogue, as the felony category was "a good deal narrower" at ratification than today. *Id.* at 467 (quoting *Lange v. California*, 594 U.S. 295 (2021)). But *Diaz* determined that colonial era laws subjecting people convicted of theft and horse theft to capital punishment

"establish that our country has a historical tradition of severely punishing people like Diaz who have been convicted of theft." *Id.* at 468–69. Because Diaz's vehicle theft conviction "would have led to capital punishment or estate forfeiture," "[d]isarming Diaz fits within this tradition of serious and permanent punishment." *Id.* at 470. The Court thus held that § 922(g)(1) was constitutional as applied to Diaz and rejected the facial challenge. *Id.* at 471–72. *Diaz* left open the possibility of future as-applied challenges to § 922(g)(1) by defendants with different predicate convictions. *Id.* at 470 n.4.

After *Diaz*, the Court issued a short, published decision holding that § 922(g)(1) was constitutional as applied to a defendant with predicate felony convictions—aggravated assault with a deadly weapon and manslaughter—that "stemmed from the threat and commission of violence with a firearm." *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024). Disarming a person with convictions like Bullock fit into both the traditions of capital punishment for homicide and of disarmament upon a "going armed" conviction for menacing the public with firearms. *Id.* A recent decision, *United States v. Schnur*, extended *Bullock*'s reasoning to a prior aggravated battery conviction even though it did not involve

a firearm, reasoning that Schnur's prior "felony conviction for a 'crime of violence' indicates that he poses a threat to public safety and the orderly functioning of society." 132 F.4th 863, 870 (5th Cir. 2025). *Schnur* also held that *Diaz* foreclosed the Second Amendment challenge because Schnur had prior "theft-related felony convictions" for robbery and burglary. *Id.* at 871.

This Court also decided that "the government may disarm those who continue to serve sentences for felony convictions." *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025) (citing *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024), *cert. pending,* No. 24-968, and *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024)). Because Giglio, at the time of his arrest, was serving a term of supervised release for a prior felony conviction, this Court held that the application of § 922(g)(1) to him did not violate the Second Amendment. *Id.* Another panel similarly held that the history of disarming people while they completed their sentences, together with history disarming intoxicated people given the defendant's prior 18 U.S.C. § 922(g)(3) conviction, supported the application of § 922(g)(1) to that defendant. *United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025).

13

Several petitions for writs of certiorari are pending that challenge the constitutionality of § 922(g)(1). *See, e.g.*, Docket, *United States v. Diaz*, No. 24-6625 (U.S.); Docket, *United States v. Moore,* No. 24-968 (U.S.).

**B. Section 922(n) violates the Second Amendment as applied to Simien because the government cannot show a longstanding history of disarming someone with an indictment analogous to his.**

Section 922(n) is unconstitutional as applied to Simien. His conduct is covered by the Second Amendment, and the government cannot show "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [his]." *Diaz*, 116 F.4th at 467.

**1. Simien and his conduct—receipt of a firearm—are covered by the Second Amendment.**

At the first step of the *Bruen* analysis, the Second Amendment covers Simien and his conduct—receiving a firearm while under indictment. This Court recently "assume[d]" that the plain text of the Second Amendment covers the conduct and individuals subject to § 922(n). *Quiroz*, 125 F.4th at 717. That assumption is correct.

*First*, the conduct prohibited by § 922(n)—here, receiving a firearm—is protected conduct. Just as the "right to 'keep and bear

arms' surely implies the right to purchase them," *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 590 (5th Cir. 2025), it also includes the right to receive a firearm. After all, "constitutional rights impliedly protect corollary acts necessary to their exercise." *Id.*

*Second*, Simien is among "the people" protected by the Second Amendment. That term includes "all Americans," "not an unspecified subset." *Heller*, 554 U.S. at 580–81. And if someone *convicted* of a felony is part of "the people," *Diaz*, 116 F.4th at 466–67, then someone who has only been *indicted* must also be. After all, the phrase "the people" "does not distinguish between those who have and have not been *indicted* on felony charges." *United States v. Gore*, 118 F.4th 808, 813 (6th Cir. 2024).

Thus, § 922(n) is presumptively unconstitutional as applied to Simien. *See Bruen*, 597 U.S. at 17.

## 2. There is no historical tradition of pretrial detention for a robbery indictee like Simien.

Under *Quiroz*, and consistent with *Diaz*, the government must present evidence of a historical tradition of detaining pretrial someone indicted for an offense like Simien's—aggravated robbery. *Quiroz*, 125 F.4th at 724; *Diaz*, 116 F.4th at 468–72. The government

presented no such evidence below. *See* ROA.105–114. *Quiroz* recognized that certain jurisdictions required pretrial detention for capital or serious offenses at the founding. 125 F.4th at 719–22. This practice was certainly not uniform. *Id.* About half the Nation instead required *bail* and only allowed for discretionary detention for capital offenses. Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1843 (2024). The question is thus whether a robbery indictment like Simien's would have subjected him to pretrial detention at the founding. The answer is no.

Since the government has not presented any pertinent historical evidence, Simien addresses the historical evidence presented in *Quiroz. Quiroz* relied almost exclusively on a summary chart of bail and capital offenses at the founding. 125 F.4th at 724–25 (citing John N. Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention*, 55 Va. L. Rev. 1223, 1226–29 & nn.17, 22 (1969)). According to the chart, in 1791, robbery was a capital offense in Connecticut, Delaware, Massachusetts, New Hampshire, New York, and Rhode Island. Mitchell, *Bail Reform* 1227–28 n.22. Of those six states, only Delaware, New Hampshire, and Rhode Island required pretrial detention for robbery defendants. *Id.* at 1226 & n.17. That three states required detention of those accused of robbery is hardly

sufficient to show a tradition of disarming someone indicted for robbery. *See Bruen*, 597 U.S. at 46 ("doubt[ing] that three colonial regulations could suffice to show a tradition of public-carry regulation").

This evidence is insufficient to show that Simien's felony indictment means that he fits within the "historical tradition of permanently punishing certain offenders *who … would have been [subject to mandatory pretrial detention] at the time of the Founding.*" *Diaz*, 116 F.4th at 469 (emphasis added). Indeed, the First Congress recognized only a select few felonies as capital, including treason, murder, certain piracy and maritime offenses (e.g., robbery upon the seas), prison break for capital offenders, and counterfeiting U.S. securities or certificates. *See* Crimes Act, 1 Cong. Ch. 9, 1 Stat. 112, 115 (1790). The Second Congress recognized an additional, specific kind of robbery as a capital offense—robbery of a mail carrier or the mail. 2d Cong. Ch. 7, 1 Stat. 237 (1792). Robbery outside of these specific contexts was not a capital crime. *See* Crimes Act, 1 Cong. Ch. 9, 1 Stat. 114 n.(a). And the federal government during the

founding era only permitted pretrial detention for capital offenses.[2] Judiciary Act of 1789, 1 Stat. 73, Sec. 33; *see Quiroz*, 125 F.4th at 720–21 (explaining that after indictment for the capital offense of treason, bail was unavailable).

Thus, the government has not carried its heavy burden of presenting analogous historical regulations with a sufficiently similar "how" and "why" to the burden § 922(n) imposes on Simien's Second Amendment rights based on his Texas aggravated robbery indictment.

---

[2] *Schnur* broadly interprets *Diaz* as holding that all theft-related offenses are capital offenses despite the lack of historical support for that proposition. *See Schnur*, 132 F.4th at 870–71; *Diaz*, 116 F.4th at 468 (citing one case of a thief being sentenced to death in Massachusetts in the 1600's and a 1788 New York law that imposed capital punishment for theft only for repeat offenses). But the question for § 922(n) is different. For § 922(n) under *Quiroz*, the historical record must support a tradition of *pretrial detention*. 125 F.4th at 723. Proof of an offense being subject to capital punishment is not enough. *See id.* at 724–25 (examining whether jurisdictions imposed mandatory pretrial detention upon a capital-offense indictment).

### C. Simien's § 922(n) conviction is not rendered constitutional simply because he was serving a sentence when he received and possessed the firearms.

Nor is Simien's felon-in-possession conviction rendered constitutional because of the circumstance that he was on deferred adjudication when he received and possessed firearms. To be sure, *Giglio* could suggest the opposite conclusion. 126 F.4th at 1044. But *Giglio* does not dictate that outcome here for two reasons.

*First*, *Giglio* applies to people serving *post-conviction* sentences, not someone like Simien who was on deferred adjudication probation. 126 F.4th at 1043–44. *Giglio* and the cases upon which it relies concluded that "the government may disarm those who continue to serve sentences *for felony convictions*." *Id.* (emphasis added); *see Moore*, 111 F.4th at 271 ("Convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences."). This tradition—disarmament as part of a sentence after a *conviction*—is different than deferred adjudication probation, which applies *before* a conviction is entered.

"Under Texas law, deferred adjudication probation is neither a conviction nor a sentence." *United States v. Mondragon-Santiago*, 564 F.3d 357, 368 n.9 (5th Cir. 2009). Rather, "after receiving a plea

of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt," the court can "defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision." Tex. Crim. Proc. Ann. art. 42A.101(a). If the defendant successfully completes deferred adjudication, no conviction is entered. Tex. Crim. Proc. Ann. art. 42A.111(a). The government has not advanced evidence of a historical tradition relevantly similar to disarmament during deferred adjudication.

*Second*, even if the Court determines deferred adjudication is relevantly similar to the tradition of disarmament while serving a sentence, that tradition is not an application of § 922(n)—which prohibits receipt of a firearm based on a felony *indictment*. *Giglio*'s suggestion that the circumstance of a sentence could support § 922(g)(1) conflicts with *Diaz* and is thus not binding. *See United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025) ("Under our rule of orderliness, when one panel decision disregards an earlier panel decision, we are duty-bound to follow the earlier one."); *Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023) ("To the extent two panel decisions conflict, the earlier decision controls.").

In *Diaz*, this Court explained that, when evaluating a Second
Amendment challenge to § 922(g)(1), a court can consider only "con-
victions that are 'punishable by imprisonment for a term exceeding
one year.'" 116 F.4th at 467 (quoting § 922(g)(1)). Past conduct that
did not result in a conviction punishable by more than one year is
"not relevant." *Id.* Even misconduct occurring at the same time as
the charged gun possession is irrelevant because "that charge must
... rely on previous history." *Id. Giglio*'s focus on supervised-release
*status*, 126 F.4th at 1044, rather than the status triggering the pro-
hibition on firearm possession—having a felony *conviction*—disre-
gards the framework for evaluating an as-applied challenge to
§ 922(g)(1) set forth in *Diaz*, 116 F.4th at 467.

Under the *Diaz* framework, a court evaluating an as-applied
challenge to § 922(g)(1) can consider only the event triggering the
prohibition on firearm possession—the felony conviction. Section
922(g)(1) does not prohibit gun possession while on parole or during
a term of supervised release. Thus, an individual's parole or super-
vised-release status is irrelevant to that analysis. The fact that a
person may be violating the conditions of his parole or supervised
release while possessing a gun is akin to any other misconduct a
defendant may commit while possessing a gun. It is irrelevant to

the analysis because a § 922(g)(1) charge must rely on "previous history" establishing the person's prohibited status, not concurrent conduct. *Diaz*, 116 F.4th at 467.

*Giglio*'s reliance on out-of-circuit cases *Moore* and *Goins* is misplaced, as the approaches in those circuits directly conflict with the framework and analysis endorsed by this Court in *Diaz*. Again, *Diaz* instructs that, when evaluating whether there is a relevantly similar historical tradition of firearm regulation to § 922(g)(1), courts are to consider only "prior *convictions* that are 'punishable by imprisonment for a term exceeding one year.'" 116 F.4th at 467 (quoting § 922(g)(1)) (emphasis added). The Third and Sixth Circuits, by contrast, allow courts to consider a much wider universe of facts. In the Sixth Circuit, courts "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction." *Goins*, 118 F.4th at 804. Similarly, the Third Circuit has held that the circumstances giving rise to an as-applied challenge "include facts beyond the predicate offenses alleged in the indictment." *Moore*, 111 F.4th at 273.

Fundamentally, those other circuits ask the wrong question. *See* Petition for Writ of Certiorari 18–21, *United States v. Moore*, No. 24-968 (U.S.). The Third Circuit poses the question as: "[d]oes a

convict completing his sentence on supervised release have a constitutional right to possess a firearm?" *Moore*, 111 F.4th at 267. Yet Congress has not enacted a law banning gun possession by a parolee. If it had, the analysis in *Moore* and *Goins* may be relevant. But since § 922(g)(1) is not such a law, the question, as this Court has recognized and endorsed, is whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant's]." *Diaz*, 116 F.4th at 467.

The decisions in *Giglio*, *Moore*, and *Goins* are also in significant tension with Supreme Court guidance on as-applied challenges. As the Supreme Court has explained, an "application" of a statute considers only conduct that the challenged statute "actually authorizes or prohibits." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Situations that "do not involve actual applications of the statute" are "irrelevant" to the analysis. *Id.* at 417–19. By allowing courts to examine facts irrelevant to § 922(g)(1)'s prohibition, *Giglio*, *Moore*, and *Goins*, do not faithfully apply Supreme Court precedent. *Diaz* forecloses any argument that Simien's deferred-adjudication probation justifies his § 922(n) convictions.

* * *

For these reasons, this Court should hold that § 922(n), as applied to Simien, violates the Second Amendment. Accordingly, this Court should reverse the order denying the motion to dismiss and vacate Simien's § 922(n) conviction.

## II. Section 922(n) facially violates the Second Amendment. (Foreclosed.)

Section 922(n) prohibits Simien, a member of "the people" protected by the Second Amendment, from engaging in the conduct the Amendment sought to place beyond regulation: the mere possession (or receipt) of a firearm. Because § 922(n) facially prohibits conduct protected by the Second Amendment, and the government cannot demonstrate that it fits within this Nation's tradition of firearm regulation, this Court should declare the prohibition facially unconstitutional. Simien recognizes this argument is foreclosed by *Quiroz* but raises it to preserve for further review.

*Quiroz* is out-of-step with the Supreme Court's Second Amendment framework in three critical ways. *First*, pretrial detention is not a firearm regulation relevant to the Second Amendment analysis. *Bruen* and *Rahimi* relied solely on historical traditions that targeted the misuse of firearms. *Rahimi*, 602 U.S. at 696; *Bruen*, 597 U.S. at 39–70. Yet *Quiroz* reaches to an analogue—pretrial

detention—that does not target the misuse of firearms. 125 F.4th at 718–20.

*Second*, the historical surety and going armed laws relied upon in *Rahimi* do not support § 922(n) because they do not have a relatively similar purpose and burden. The "why" of surety and going armed laws was to restrict gun use when an individual "poses a clear threat of physical violence to another." *Rahimi*, 602 U.S. at 698. Section 922(n), by contrast, affects the inverse population: people who have been *released* pretrial and thus have *not* been determined to pose a significant threat to public safety. The "how" also is different. Surety and going armed laws restricted firearms access based on a judicial determination of past misuse of a firearm or future threat to physical safety. *Id.* at 699. By contrast, § 922(n) prohibits receipt of a firearm without any individualized determination of danger or risk of firearm misuse.

*Third*, even if the historical analogue relied upon in *Quiroz*—pretrial detention—is a proper firearm restriction to consider, it differs from § 922(n) in why and how it burdens the right to bear arms. People who were detained at the founding could not bear arms by virtue of being detained based on the classification of the indicted offense as capital or serious. *Quiroz*, 125 F.4th at 718 (claiming one

purpose of pretrial detention is a concern for public safety). Pretrial detention was not targeted "to protect the public from the danger of illegal firearm use by indictees," a purpose of § 922(n). *Id.* The burden on the right to armed self-defense is also different. True, the duration is limited. *Id.* at 719. But someone who is detained has a diminished need for and right to a firearm for self-defense because he is in the government's care. *Cf. Reese*, 127 F.4th at 596 ("Actions taken *in loco parentis* [by universities over student conduct] say little about the general scope of Constitutional rights and protections."). By contrast, someone who is at liberty relies on himself, not the government, for protection. Section 922(n) thus imposes a significantly greater burden on the right to armed self-defense than does pretrial detention.

Overall, *Quiroz* adopts a level of generality that is too high. As *Bruen* warned, "everything is similar in infinite ways to everything else," so the analysis must focus on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 597 U.S. at 29. The broad purpose of "public safety" operates at too high a level of generality to be a useful comparator. A "legislature's ability to deem a category of people dangerous based only on belief would subjugate the right to bear arms 'in public for self-defense' to 'a

second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Worth v. Jacobson*, 108 F.4th 677, 694 (8th Cir. 2024) (quoting *Bruen*, 597 U.S. at 70) (holding, post-*Rahimi*, that Minnesota had not established a historic tradition restricting arms carrying to those who are more than 20 years old).

Indeed, this Court rejected the government's argument that legislatures have the "broad[ ] authority to restrict arms-bearing by 'categories of persons' that 'present a special danger of misuse,'" noting that *Rahimi* only recognized such authority after a court found the defendant represented a credible threat to the physical safety of another. *Reese*, 127 F.4th at 598. Yet *Quiroz* accepts as a proper purpose for § 922(n) that a broad category of felon indictees cannot be entrusted with a firearm absent a specific judicial finding that they pose any particular threat. 125 F.4th at 718. Such analysis impermissibly leads to the Second Amendment being a "regulatory blank check." *Bruen*, 597 U.S. at 30.

Because there is no relevantly similar historical analogue to § 922(n), it is unconstitutional on its face. The Court should thus vacate Simien's conviction.

## III. Section 922(o) violates the Second Amendment both facially and as applied to Simien.

Section 922(o) is presumptively unconstitutional because machineguns are "arms" protected by the plain text of the Second Amendment. The government cannot show a historical tradition of prohibiting possession of machineguns. Thus, the district court's order denying Simien's motion to dismiss the indictment should be reversed and his § 922(o) conviction vacated.

### A. The Second Amendment's plain text covers possessing firearms, including a machinegun.

Again, the Second Amendment protects the right "of the people to keep and bear Arms." U.S. Const. amend. II. As the Supreme Court has recognized, the Second Amendment's text extends "to *all instruments that constitute bearable arms*, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (emphasis added). A machinegun—a "weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," 26 U.S.C. § 5845(b)—is a bearable arm. Thus, the Constitution presumptively protects the conduct § 922(o) prohibits. *See Bruen*, 597 U.S. at 17.

Before *Bruen*, this Court held that "[m]achineguns are dangerous and unusual" and so "are not protected arms under the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). But this Court has repeatedly held that "*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering our prior precedent obsolete." *United States v. Rahimi*, 61 F.4th 443, 450–51 (5th Cir. 2023), *rev'd on other grounds,* 602 U.S. 680 (2024); *Diaz*, 116 F.4th at 465 (same, and explaining that "[t]he law of orderliness mandates that we abandon that prior precedent."). This Court has noted that *Hollis* has been "abrogated." *Siders v. City of Brandon*, 123 F.4th 293, 304 (5th Cir. 2024). So *Hollis* is no longer binding. In any event, *Hollis*'s conclusion was not based on the text of the Second Amendment itself. Rather, *Hollis* was based on Supreme Court dicta related to a historical tradition—which would come into play only at the second step of the *Bruen* framework—of prohibiting dangerous and unusual weapons and was based on outdated statistics. *See infra* Part III.B.

Thus, § 922(o) is presumptively unconstitutional under the plain text of the Second Amendment.

## B. The government cannot show that § 922(o) aligns with the country's historical tradition of firearm regulation.

At the second step of the *Bruen* analysis, the government cannot show that § 922(o) is "consistent with this Nation's historical tradition of firearm regulation." *See* 597 U.S. at 17.

To be sure, the Supreme Court has identified a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (collecting sources). To fall under this tradition, the government must show that the weapon is *both* dangerous *and* unusual. *See Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring) ("[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual."). This Court has held that machineguns "are dangerous and unusual" because they are "not in common use," so they "do not receive Second Amendment protection." *Hollis*, 827 F.3d at 451. But updated statistics since *Hollis* show that machineguns are possessed by nearly a million Americans.

In *Hollis*, the Court relied on statistics from the Bureau of Alcohol, Tobacco, Firearms and Explosives tallying about 176,000 machineguns in existence. 827 F.3d at 449. But more recent reports from ATF show that these earlier statistics dramatically

30

understated the number of machineguns. By 2021, over 740,000 machineguns were lawfully possessed in the United States and registered with ATF. *See* U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021* at 15–16, https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download. And that number does not include unlawfully owned machineguns, which count when determining whether machineguns are in common use. *Cf. Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) ("[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned."). In other words, "[t]he number of machineguns in *Hollis* differs from the factual record in our case by a factor of four." *United States v. Brown*, — F. Supp. 3d. —, 2025 WL 429985, at *5 (S.D. Miss. Jan. 29, 2025) (holding that § 922(o) violates the Second Amendment as applied to defendant).

That more than 740,000 Americans possess machineguns shows that they are in common use. *See Caetano*, 577 U.S. at 420 (Alito, J., concurring) (finding that stun guns are in "common use" because "hundreds of thousands of Tasers and stun guns have been sold to

31

private citizens"); *Maloney v. Singas*, 351 F. Supp. 3d 222, 237 (E.D.N.Y. 2018) (finding that sales of over 64,000 nunchaku showed that they are in common use). Thus, they do not fall within the tradition of prohibiting the carrying of dangerous and unusual weapons and § 922(o) is unconstitutional.

Because machineguns are not unusual, the government cannot fall back on the Supreme Court's recognition of a historical tradition of prohibiting the carrying of "dangerous and usual weapons." *Heller*, 554 U.S. at 627. Thus, § 922(o) is unconstitutional, either facially or as applied to Simien.

## Conclusion

For the foregoing reasons, the Court should reverse the order denying Simien's motion to dismiss the indictment and vacate his § 922(n) and § 922(o) convictions.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

s/ Carl R. Hennies
CARL R. HENNIES
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
(210) 472-6700
(210) 472-4454 (Fax)

*Attorney for Defendant-Appellant*

**Certificate of Compliance with Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,391 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook in body text and 13-point in footnotes.

s/ Carl R. Hennies
CARL R. HENNIES
*Attorney for Defendant-Appellant*
Dated: April 21, 2025
